**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                       )
ESTER LELCHOOK, individually and       )
as personal representative of the      )
Estate of David Martin Lelchook;       )
MICHAEL LELCHOOK; YAEL LELCHOOK;       )
ALEXANDER LELCHOOK; and                )
DORIS LELCHOOK,                        )
                                       )
                Plaintiffs,            )
                                       )   Civil Action
        v.                             )   No. 15-13715-PBS
                                       )
THE ISLAMIC REPUBLIC OF IRAN;          )
THE CENTRAL BANK OF THE ISLAMIC        )
REPUBLIC OF IRAN;                      )
BANK SADERAT IRAN; and                 )
BANK SADERAT, PLC,                     )
                                       )
                Defendants.            )
_____)
```

**MEMORANDUM AND ORDER**

August 9, 2016

Saris, C.J.

**INTRODUCTION**

This case involves the death of David Lelchook, an American citizen, killed by a rocket fired by Hezbollah into northern Israel during the summer of 2006. Plaintiffs, the decedent's relatives, allege that the defendants—Iran, the Central Bank of the Islamic Republic of Iran, Bank Saderat Iran, and Bank Saderat, PLC—helped funnel money to Hezbollah. Plaintiffs have brought claims under the Foreign Sovereign Immunities Act, 28

1

U.S.C. § 1602 et seq., and the Antiterrorism Act, 18 U.S.C. § 2331 et seq., as well as supplemental tort claims under Israeli and Massachusetts law.

Defendant Bank Saderat, PLC (BSPLC), has moved to transfer this case under 28 U.S.C. § 1404(a) to the District of Columbia. After hearing and supplemental briefing, the Court concluded that it must find that the District of Columbia has personal jurisdiction over BSPLC before transferring the case there. Docket No. 54. Both parties argue that the District Court for the District of Columbia lacks personal jurisdiction over BSPLC. Nonetheless, BSPLC maintains the equitable doctrine of judicial estoppel provides an alternative basis for transfer. Finding that judicial estoppel does not apply here, the Court **DENIES** the defendant's motion to transfer (Docket No. 21).

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted.

## I. The Present Case

Between July 12 and August 14, 2006, Hezbollah[1] fired thousands of rockets into northern Israel. On August 2, 2006, one of these rockets killed David Lelchook, a 52-year-old American citizen, while he was riding his bicycle in Kibbutz

---

[1] Hezbollah has been designated a Specially Designated Terrorist by the State Department since 1995, a Foreign Terrorist Organization since 1997, and a Specially Designated Global Terrorist since 2001.

Saar. Plaintiffs here are the estate, widow, daughters, brother, and mother of Mr. Lelchook.[2]

Defendants are the Islamic Republic of Iran (Iran), the Central Bank of the Islamic Republic of Iran (CBI), Bank Saderat Iran (BSI), and Bank Saderat, PLC (BSPLC). CBI is a political subdivision of Iran and its central bank. BSI is a bank incorporated in Iran and one of the country's largest commercial banks. At the time of the rocket attack in question, BSI was wholly owned and controlled by the Iranian government.[3] BSPLC is a bank incorporated in England and Wales, and is a wholly-owned subsidiary of BSI. The plaintiffs allege—and BSPLC disputes—that the defendants provided extensive, material support and resources to Hezbollah that enabled it to fire the rocket that killed Mr. Lelchook. Specifically, the plaintiffs assert that Iran utilizes CBI, BSI, and BSPLC to transfer funds to its terrorist proxies, including Hezbollah.

The plaintiffs' complaint alleges seven separate counts. Counts I and II are against Iran and CBI, and allege violations

---

[2] Ester Lelchook is the widow of Mr. Lelchook and personal representative of his estate. Michal and Yael Lelchook are Mr. Lelchook's daughters. Alexander Lelchook is Mr. Lelchook's brother and a resident of Acton, Massachusetts. Doris Lelchook is Mr. Lelchook's mother and a resident of Newton Upper Falls, Massachusetts.

[3] Defendants BSI and BSPLC have previously asserted that Iran has owned less than half of BSI's shares since 2009. See Kaplan v. Cent. Bank of the Islamic Republic of Iran, 961 F. Supp. 2d 185, 198 (D.D.C. 2013).

of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. (FSIA). Counts III and IV are against BSI and BSPLC, and allege violations of the Antiterrorism Act, 18 U.S.C. § 2331 et seq. (ATA). Counts V and VI are against all four defendants, and allege violations of Israeli tort law. Count VII is against all four defendants, and alleges a violation of Massachusetts tort law.

Plaintiffs have attempted service on all four defendants. BSPLC is the sole defendant moving to transfer venue. None of the other defendants answered or filed any other motion. The Clerk has entered notices of default as to BSI (Docket No. 44) and CBI (Docket No. 65). The Court has not entered a default judgment against any defendant.

## II. The D.C. Litigation

On July 9, 2010, the same plaintiffs sued the same defendants over the death of the same individual in the District of Columbia. See Lelchook v. Cent. Bank of the Islamic Republic of Iran, Civ. No. 10-1184 (RCL) (D.D.C. Aug. 20, 2013) ("Lelchook I"). In that case, the plaintiffs brought the same claims as those brought here: FSIA claims, ATA claims, and Israeli tort claims.

While the plaintiffs' claims were pending in Lelchook I, another group of plaintiffs sued the same four defendants: Iran, CBI, BSI, and BSPLC. See Kaplan v. Cent. Bank of the Islamic

4

Republic of Iran, 961 F. Supp. 2d 185, 190 (D.D.C. 2013). The claims at issue in Kaplan involved different rocket attacks during the same 34-day conflict along the border between Israel and Lebanon. Id. The plaintiffs brought FSIA, ATA, and Israeli tort law claims. Id. At 190-91. The court dismissed all claims against BSPLC and BSI, including the same claims against BSPLC at issue here: that BSPLC had violated the ATA by aiding and abetting, or directly engaging in, international terrorism. Id. at 206.

The Kaplan court rested its holding on the ATA's "act of war" exception. Id. at 199-201. The ATA precludes liability for an "act of war." 18 U.S.C. § 2336(a) ("No action shall be maintained . . . for injury or loss by reason of an act of war."). Section 2331(4)(C) defines an "act of war" as "any act occurring in the course of . . . armed conflict between military forces of any origin." The court concluded that Israel and Hezbollah were engaged in "armed conflict" during the 34-day cross-border fighting in July and August of 2006, and that the rocket attacks were launched "in the course of" that conflict. Kaplan, 961 F. Supp. 2d at 203. The court then decided that, at least in the context of these attacks, Hezbollah was a "military force" for purposes of § 2331(4)(C). Id. at 204. The court acknowledged that Hezbollah is also a terrorist group, but that here it engaged in "sustained combat" with Israel's military and

5

provoked that military's invasion of Lebanon, "ultimately agreeing to a U.N.-brokered cease fire with" Israel's military. Id. at 204. In that context, Hezbollah—which can alternatively be described as a "non-national paramilitary force, a terrorist group, and a part of the Lebanese government"—was a "military force" during the Israel-Lebanon war. Id. Having determined the applicability of the ATA's "act of war" exception, the Kaplan court then dismissed the plaintiffs' claims against BSPLC. Id. The court did not discuss whether it had personal jurisdiction over any of the defendants.

Citing its decision in Kaplan, the Lelchook I court dismissed "all of plaintiffs' claims against defendants BSI and BSPLC." Lelchook I, slip op. at 2. Specifically, the court dismissed "plaintiffs' FSIA claims against BSI," "all of plaintiffs' ATA claims" against BSPLC, and all "Israeli Tort claims against BSI and BSPLC." Id.[4] It did not address personal jurisdiction.

**DISCUSSION**

**I.  Parties' Arguments**

Although BSPLC offers a compelling argument that it is not subject to personal jurisdiction in the District of Columbia, it

---

[4] The court later dismissed without prejudice the plaintiffs' claims against Iran and CBI for failure to prosecute. Lelchook v. Central Bank of the Islamic Republic of Iran, Civ. No. 10-1184 (RCL) (D.D.C. Aug. 26, 2015).

6

contends that the case can still be transferred there pursuant to § 1404 because the plaintiffs are judicially estopped from challenging personal jurisdiction given that they previously filed this suit in that district. The plaintiffs respond that judicial estoppel does not apply for two reasons.

First, the D.C. district court did not accept any representation by the plaintiffs that the court could exercise personal jurisdiction over BSPLC. The plaintiffs note that the Lelchook I court did not address personal jurisdiction in its dismissal. The plaintiffs emphasize that the Lelchook I court instead dismissed BSPLC on the basis of the "act of war" exception and did so before BSPLC was served in the suit or had an opportunity to file a 12(b)(2) motion to dismiss.

Second, the plaintiffs argue that, even if their position is deemed directly inconsistent with their filing this suit in the District of Columbia, the about-face is justified by the D.C district court's subsequent decision in Wultz v. Islamic Republic of Iran, 762 F. Supp. 2d 18 (D.D.C. 2011). In Wultz, an ATA case involving a terrorist bombing in Tel Aviv, the district court held that the plaintiffs could invoke the ATA's nationwide service of process provision to establish personal jurisdiction only if they also complied with the ATA's venue provision. Id. at 25-26. Finding that plaintiffs had not satisfied the venue provision, and that the Bank of China did not have sufficient

7

minimum contacts with the District of Columbia, the court held that it lacked personal jurisdiction over the bank. Id. at 31.

## II. Legal Standard

"The doctrine of judicial estoppel is equitable in nature." Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010). It "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003). "Where one succeeds in asserting a certain position in a legal proceeding, one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed." Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012). "The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).

"The contours of judicial estoppel are hazy," Perry, 629 F.3d at 8, but "[t]here are two generally agreed-upon conditions for the application of judicial estoppel." Guay, 677 F.3d at 16. "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." Id. (quoting Alt. Sys. Concepts, 374 F.3d at 33). "Second, the responsible party must have succeeded in persuading a court to

8

accept its prior position." Id. (quoting Alt. Sys. Concepts, 374 F.3d at 33). "There is also a third oft-considered factor that asks 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 751 (2001)). "Where unfair advantage exists, however, it is a powerful factor in favor of applying the doctrine." Id. at 16-17. "The presence of these elements creates the appearance that either the first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process." Alt. Sys. Concepts, 374 F.3d at 33. "[I]n a prototypical case, judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.'" Id. (quoting InterGen, 344 F.3d at 144).

"[I]n limited circumstances, courts have recognized a good faith exception to the operation of judicial estoppel." Id. at 35. "For example, that exception may be available if the responsible party shows that the new, inconsistent position is the product of information neither known nor readily available to it at the time the initial position was taken." Id.

**III. Analysis**

At first glance, this case may appear to be a candidate for judicial estoppel: the plaintiffs filed this same suit in the District of Columbia, lost on the merits, and now—in opposing transfer under § 1404—argue that the case could not have been brought in that same district in the first place. Although there are obvious concerns about forum shopping, the Court finds that judicial estoppel does not apply here.

The first factor is met: the plaintiffs' positions are directly inconsistent. The plaintiffs concede as much. In filing this suit in the District of Columbia, the plaintiffs invited the district court to exercise personal jurisdiction over BSPLC. Now that BSPLC seeks to transfer the case to that same district, the plaintiffs have taken a different tack.

The plaintiffs maintain, however, that while their "current position may be inconsistent with their prior position that BSPLC was subject to personal jurisdiction in D.C.," judicial estoppel does not apply because the law changed between the filing of this case in D.C. in 2010 and the re-filing of it here in 2015. Docket No. 59 at 8; see Boston Gas Co. v. Century Indem. Co., 708 F.3d 254, 263 (1st Cir. 2013) (noting that a "subsequent change in governing law" may excuse a change in a party's legal positions). The change in governing law to which the plaintiffs refer is the D.C. district court's decision in

10

Wultz v. Islamic Republic of Iran, 762 F. Supp. 2d 18 (D.D.C. 2011).

Wultz does not justify the plaintiffs' change in position. In Wultz, the defendant had offices in the United States and was served in the United States. The issue was whether the plaintiffs could establish personal jurisdiction under the ATA solely by serving the defendant within the United States, therefore complying with the Act's nationwide service of process provision, or whether they were also required to comply with the ATA's venue provision. Wultz, 762 F. Supp. 2d at 27 ("The issue before the Court is not whether this action is properly venued; the issue is whether plaintiffs may invoke the ATA's grant of nationwide service without first satisfying the specific venue conditions set forth in the ATA."); see also 18 U.S.C. § 2334(a) ("Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.").

The court held that the plaintiffs must do both: serve the defendant in accordance with the nationwide service of process provision and initiate the suit in a district in which venue is proper. Wultz, 762 F. Supp. 2d at 25-26 ("[I]nvocation of the

11

ATA's provision of nationwide service of process rests on the satisfaction of its venue clause."). Wultz pertains only to cases in which the ATA's nationwide service of process provision provides for personal jurisdiction. Wultz says nothing about the scenario here, where the defendant is served abroad. Wultz does not excuse the plaintiffs' inconsistent positions.

The plaintiffs, however, have a much stronger argument with respect to the second requirement: there is no indication that the D.C. district court adopted the plaintiffs' position that it had personal jurisdiction over BSPLC. When the court dismissed BSPLC, it did so without mentioning personal jurisdiction and before BSPLC was served. The issue of personal jurisdiction therefore had not been briefed. Nor was it adjudicated. On this basis, the Court declines to apply the equitable doctrine of judicial estoppel.

Another reason counsels against estoppel in this context: judicial efficiency. BSPLC requests that the Court bind the plaintiffs to their original position—that personal jurisdiction was proper in the District of Columbia—so that the case may be transferred there. But the defendant does not agree to defend this suit in the District of Columbia either. Upon transfer, BSPLC will argue that the transferee court lacks personal jurisdiction over it. See Docket No. 21, Ex. 1 at 8 n.4 ("BSPLC, a British bank doing no business in the United States, asserted

12

(and continues to claim here) a lack of jurisdiction over it in Kaplan or otherwise in U.S. courts. The Court in Kaplan did not have to address the issue since BSPLC was dismissed entirely on other grounds. . . . BSPLC [maintains here] that there is no jurisdiction over it in this Court or in any other courts in the U.S."). The Court will not facilitate this fool's errand.

While the plaintiffs may be "playing fast and loose with the courts," see Alt. Sys. Concepts, 374 F.3d at 31, filing this case three times—initially in the District of Columbia in 2010, again in the District of Columbia in 2014, and finally in this District in 2015—the Court holds that judicial estoppel is not warranted here because the plaintiffs did not succeed "in persuading a court to accept [their] earlier position" that the D.C. district court had personal jurisdiction over BSPLC. See Perry, 629 F.3d at 9.

***

The Court has already received briefing and heard argument on the issue of whether this Court has personal jurisdiction over BSPLC. And yet BSPLC has not actually filed a 12(b)(2) motion to dismiss for lack of personal jurisdiction. Any motions to dismiss for lack of personal jurisdiction shall be filed within fourteen days of this order. Because both parties have briefed the issue extensively, the defendant's accompanying

13

brief and the plaintiffs' opposition are limited to ten pages each. No replies may be filed.

## **ORDER**

The defendant's motion to transfer (Docket No. 21) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge